# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **::** | |
| | **::** | **CRIMINAL ACTION FILE NO.** |
| **v.** | **::** | **1-12-CR-221-02-ODE-AJB** |
| | **::** | |
| **OGUZHAN AYDIN,** | **::** | |
| | **::** | |
| **Defendant.** | **::** | |

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION

Before the Court are the motions to dismiss the indictment, [Docs. 34, 40], and to strike surplusage, [Doc. 41], filed by Defendant Oguzhan Aydin ("Aydin" or Defendant). For the following reasons, the undersigned **RECOMMENDS** that the motions to dismiss, [Docs. 34, 40], be **GRANTED IN PART AND DENIED IN PART**. Further, the motion to strike surplusage, [Doc. 41], is **DENIED**.[1]

---

[1]     Defendant's motion to strike surplusage is a non-dispositive motion and thus may be ruled upon by the undersigned by an Order rather than through a Report and Recommendation. *See United States v. Parker*, 165 F. Supp. 2d 431, 439 n.1 (W.D.N.Y. 2001).

AO 72A
(Rev.8/8
2)

*I.*    <u>*Introduction*</u>

On July 10, 2012, a grand jury in this District returned a 7-count indictment against Aydin and others.  [Doc. 39].[2]  Count One charges that, from September 1, 2009 to August 1, 2010, Aydin and co-defendants Saeid Kamyari ("Kamyari"), AGM Ltd. Co. ("AGM"), and Blue Sky Aviation ("Blue Sky") conspired in violation of 18 U.S.C. § 371 to knowingly and willfully export and to cause to be exported from the United States to the Islamic Republic of Iran ("Iran") certain United States defense articles, in violation of certain Executive Orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06; and to knowingly and willfully export and to cause to be exported from the United States to Iran microcircuits and other aircraft parts, without first having obtained from the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") a license for

---

[2]    The indictment as returned, [Doc. 1-1], was sealed in whole or in part until September 24, 2014.  [*See* Doc. 37].  For purposes of this Order and R&R, the Court cites to the unsealed version of the indictment, [Doc. 39].  In addition, Aydin filed his initial motion to dismiss, [Doc. 34], before the indictment was totally unsealed.  In this R&R, the Court refers only to the motion to dismiss, [Doc. 40], filed after the indictment was unsealed.

2

such export or written authorization for such export, in violation of the IEEPA, 50 U.S.C. § 1705, and 31 C.F.R. §§ 560.203 and 560.204.  [Doc. 39 at 1-17, ¶¶ 1-18].[3]

Count Two charges that, from November 6, 2009 until August 1, 2010, Aydin, Kamyari and Blue Sky did "knowingly and willfully attempt to export and attempt to cause the export of defense articles, namely certain parts designed for the F-14 fighter jet" to Iran through the Republic of Turkey ("Turkey") without first having obtained the required license and authorization from the U.S. State Department, in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 2.  [Doc. 39 at 17-18, ¶¶ 19-20].

Count Three charges that, from November 6, 2009 until August 1, 2010, Aydin, Kamyari and Blue Sky conspired to export and to cause to be exported from the United States to Iran, through Turkey, F-14 fighter jet parts without first having obtained the required license and authorization from the United States Department of the Treasury's OFAC, in violation of 50 U.S.C. § 1705, in connection with 31 C.F.R. §§ 560.203 and 560.204 and 18 U.S.C. § 2.  [Doc. 39 at 18-19, ¶¶ 21-22].

Count Four charges that, from May 28, 2010 until August 1, 2010, Aydin and Blue Sky did knowingly and willfully "attempt to export and attempt to cause to be

_____

[3]      Kamyari, AGM and Blue Sky have not appeared in this action as of the date of this R&R.  [*See* Dkt.].

3

exported" from the United States to Iran, through Turkey, aircraft parts, without first having obtained the required license and authorization from the United States Department of the Treasury's OFAC, in violation of 50 U.S.C. § 1705, in connection with 31 C.F.R. §§ 560.203 and 560.204 and 18 U.S.C. § 2.  [Doc. 39 at 19, ¶¶ 23-24].

Count Five charges that on November 6, 2009, Kamyari transferred funds from outside the United States to Atlanta, Georgia, with the intent to promote the carrying on of a violation of the IEEPA, 50 U.S.C. § 1705, and the Arms Export Control Act, 22 U.S.C. § 2778, in violation of 18 U.S.C. § 1956(a)(2)(A).  [Doc. 39 at 19-20, ¶¶ 25-26].

Finally, Counts Six and Seven charge that on April 30, 2010 and June 16, 2010, respectively, Kamyari, Aydin, and Blue Sky transferred funds from outside the United States to Atlanta, Georgia, with the intent to promote the carrying on of a violation of the IEEPA, 50 U.S.C. § 1705, and the Arms Export Control Act, 22 U.S.C. § 2778, in violation of 18 U.S.C. § 1956(a)(2)(A).  [Doc. 39 at 19-21, ¶¶ 25-26].[4]

---

[4]       The indictment also contains a forfeiture provision.  [Doc. 39 at 21-23, ¶¶ 31-32].

4

II.     _Motion to Dismiss, [Docs. 34, 40]_

Aydin makes various arguments as to why some of the counts in the indictment are improper.  The Court will discuss the arguments in the order in which they are raised in the motion to dismiss.

A.      Counts Two and Four--Failure to State an Offense

1.      Contentions of the Parties

In his motion to dismiss, Aydin first argues that Counts Two and Four fail to state federal crimes, on the grounds that "attempting to cause an export" of defense articles without a license is not a federal crime, that there is no federal general attempt statute and that only attempts which have expressly been made crimes may be punished.  [Doc. 40 at 1-2 (quoting _United States v. Kuok_, 671 F.3d 931, 941, 942 (9th Cir. 2012); _United States v. Hopkins_, 703 F.2d 1102, 1104 (9th Cir. 1983); and _United States v. Joe_, 452 F.2d 653, 654 (10th Cir. 1972))].  He argues that Count Two is flawed because neither 22 U.S.C. § 2778 nor 18 U.S.C. § 2 criminalizes an attempt to cause an export of an unlicensed defense item.  _Id._ at 2.  He also alleges that neither 50 U.S.C. § 1705, the aiding and abetting statute, 18 U.S.C. § 2, nor the regulations cited in Count Four, 31 C.F.R. §§ 560.203, 506.204, contain attempt to cause provisions.  [Doc. 40 at 2].

5

The government in response first argues that the counts are validly pleaded because they track the statutory language and contain the essential elements of the offenses charged. [Doc. 46 at 4-5]. It contends that *Kuok* is inapposite since the court there decided that the indictment was defective because the law enforcement agent with whom the defendant was supposedly acting did not intend to export any items. [*Id.* at 6]. It also argues that § 2 criminalizes attempts because a person can be charged with intentionally attempting to cause another to do that which would ultimately result in violation of the law. [Doc. 46 at 5-8 (citing *United States v. Hornaday*, 392 F.3d 1306 (11th Cir. 2004), and *United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003))]. It also argues that Counts Two and Four conjunctively charge two ways in which Aydin violated the law, and that even if there is one part of the allegation that is defective, the other allegation is sufficient to withstand a motion to dismiss. [*Id.* at 8].

In reply, Aydin argues that the government (1) did not directly respond to his arguments that the statutes at issue do not criminalize the attempt to cause an unlicensed export, (2) failed to properly distinguish *Kuok*, (3) cannot rely upon a tortured reading of § 2 to save the counts, and (4) cannot have the indictment saved by redacting the improper allegations. [Doc. 47 at 1-4].

6

AO 72A
(Rev.8/8
2)

2.    <u>Discussion</u>

"An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Baxter*, 579 Fed. Appx. 703, 705 (11th Cir. August 24, 2014) (quoting *United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (quotation marks omitted in original)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (holding that an indictment must "contain[ ] the elements of the offense charged."). An "indictment is sufficient if it charges in the language of the statute." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). No citation to a specific code section is required. *United States v. Kahl*, 583 F.2d 1351, 1355 (5th Cir. 1978).[5] Moreover, "even the citation of an inapposite criminal statute in an indictment does not render a conviction based on a different statute invalid, so long as the elements of the relevant statutory offense charged are adequately described in the indictment." *United States v. Steiger*, Civil Action No. 2:04cv455-WHA, 2006 WL 3450140, *14 (M.D. Ala. Nov. 29, 2006)

---

[5]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(quoting *United States v. Greenwood*, 974 F.2d 1449, 1472 (5th Cir. 1992), and *United States v. Bonallo*, 858 F.2d 1427, 1430 (9th Cir. 1988) (noting that "the description of the alleged conduct is far more critical than the indictment's . . . citation of a particular provision of a statute.")).

Further, an indictment regular on its face carries with it a strong presumption of validity. *Ward v. United States*, 694 F.2d 654,658 (11th Cir. 1982) (citation omitted). In determining whether an indictment sufficiently informs the defendant of the offense charged, courts give the indictment a common-sense construction and generally will uphold an indictment even if it contains a technical error or omission. Although an indictment that tracks the statutory language defining an offense is usually sufficient, mere recitation of statutory language is acceptable only if all elements of the charged crime are subsumed in the language. *See, e.g., United States v. Fern*, 155 F.3d 1318, 1324-25 (11th Cir. 1998).

The Court concludes that Aydin's arguments are meritorious as to the "attempt to cause" allegations.

In both Counts Two and Four of the indictment, there are two different crimes alleged: "attempt to export" under 28 U.S.C. § 2278 and 50 U.S.C. § 1705 and by implication and express language, certain implementing regulations; and "attempt to

8

cause the export" of defense articles under those same statutes and regulations, as well as 18 U.S.C. § 2.

Turning first to Count Two, this count alleges a violation of 22 U.S.C. § 2778 and 18 U.S.C. § 2.  After incorporating ¶¶ 1-4, 13-15, and 18 into the count, the indictment alleges

> 20.  From on or about November 6, 2009, and continuing until on or about August 1, 2010, within the Northern District of Georgia, and elsewhere, the defendants, SAEID KAMYARI, OGUZHAN AYDIN and BLUE SKY AVIATION, aided and abetted by each other, did knowingly and willfully attempt to export and attempt to cause the export of defense articles, namely,
>
> •     Hybrid Microcircuits, Thin Film, Part Number 252889/ NSN 5952-00-235-2400;
> •     Hybrid Microcircuits, Thin Film, Part Number 252928/ NSN 5952-00-231-5119; and
> •     Hybrid Microcircuits, Thin Film, Part Number 255851/ NSN 5962-00-137-9943,
>
> which are parts designed for the F-14 fighter jet, to the Islamic Republic of Iran through the Republic of Turkey, without first having obtained the required license and authorization from the United States Department of State, in violation of Title 22, United States Code, Section 2778 and Title 18, United States Code, Section 2.

[Doc. 39 at 17-18].

Trial courts retain the power to dismiss a defective indictment in some instances. Under Federal Rules of Criminal Procedure 12(b), "[a] party may raise by pretrial

9

motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).   A trial court may dismiss an indictment that does not state an offense under the charged statute.   *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010).   All statutory interpretation begins with the language of the statute itself, and where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' "   *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

Section 2778 provides in relevant part as follows:

Any person who willfully violates any provision of this section, . . . or any rule or regulation issued under this section . . . shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

22 U.S.C. § 2778(c).  Section 2778 on its face does not contain an attempt prohibition. However, at least one of § 2778's implementing regulations prohibit the commission of attempts.  The version of 22 C.F.R. § 127.1 in effect at the time of the events described in the indictment provides,[6] in relevant part, that:

---

[6]       The version of 22 C.F.R. § 127.1 quoted in the text was effective until the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland Concerning Defense Trade Cooperation (Treaty Doc. 110-7) was entered into force on April 13, 2012.  (*See*

AO 72A
(Rev.8/8
2)

(a)  It is unlawful:

> (1) To export or *attempt to export* from the United States, or to reexport or retransfer or attempt to reexport or retransfer from one foreign destination to another foreign destination by a U.S. person of any defense article or technical data or by anyone of any U.S. origin defense article or technical data or to furnish any defense service for which a license or written approval is required by this subchapter without first obtaining the required license or written approval from the Directorate of Defense Trade Controls[.][7]

———————————

"Implementation of the Defense Trade Cooperation Treaty Between the United States and the United Kingdom," 77 FR 16592); *see also* Note preceding 22 C.F.R. § 127.1. Since the conduct alleged in the indictment occurred in 2009 and 2010, the prior version of the regulations applies.

The current version of § 127.1(a) provides:

(a) Without first obtaining the required license or other written approval from the Directorate of Defense Trade Controls, it is unlawful:

> (1) To export or attempt to export from the United States any defense article or technical data or to furnish or attempt to furnish any defense service for which a license or written approval is required by this subchapter[.]

22 C.F.R. § 127.1(a)(1) (2012).

[7]       The Directorate of Defense Trade Controls is part of the U.S. Department of State.   DDTC website, https://www.pmddtc.state.gov/index.html (last visited Jan. 5, 2015); *see also* Doc. 39, ¶ 14 ("At all times relevant to this Indictment, the Department of State, Directorate of Defense Trade Controls, regulated the exportation of defense articles by, among other things, requiring persons to apply for and receive licenses or other written approvals from the Directorate of Defense Trade Controls

11

22 C.F.R. § 127.1(a)(1) (emphasis supplied).

Since the charging statute makes it a crime to violate one of its implementing regulations, Count Two of the indictment adequately charges an attempt to violate § 2778. *Cf. United States v. Markovic*, 911 F.2d 613, 614-15 (11th Cir. 1990) ("Section 2778(b)(2) and applicable regulations provide that defense articles enumerated on the United States Munitions List may not be exported nor may an attempt be made to export them from the United States without a license for such export or written approval from the Department of State, unless the regulations provide for an exemption."); *United States v. Herrera*, 711 F.2d 1546, 1555 n.17 (11th Cir. 1983) (noting that § 2778 and 22 C.F.R. § 127.1 criminalize attempts to export firearms without a license); *United States V. Aircraft (One (1) Douglas AD-4N Skyraider Aircraft, etc.)*, 839 F. Supp. 2d 1343, 1249 (N.D. Ala. 2011) (noting that federal regulations that accompany § 2778 state that it is unlawful to import or attempt to import any defense article without first obtaining the required license or written approval from the Directorate of Defense Trade Controls).

That does not end the inquiry, however, because Count Two also alleges that the defendants named therein also "attempt[ed] to cause the export of defense articles."

_____

before exporting defense articles.").

12

Aydin argues that nowhere in either § 2778, its regulations or § 2 is the "attempt to cause" criminalized. He primarily relies upon the Ninth Circuit's decision in *Kuok*. In *Kuok*, the defendant was charged and convicted under § 2278 and its implementing regulations, specifically, 22 C.F.R. § 127.1(a)(1). *Kuok*, 671 F.3d at 940. The government charged Kuok with violating the statute and regulation by asking an undercover agent to send him an encryptor device (for which a license to export was required) in exchange for a $1700 wire transfer. *Id.* Following his conviction, Kuok argued on appeal § 2278 and its implementing regulations do not create liability for attempting to cause another person to violate the statute. *Id.* The *Kuok* court noted that the evidence at trial did not establish that Kuok exported or attempted to export the encryptor, but he attempted to cause an undercover agent to export it. *Id.* at 941. The government argued that 18 U.S.C. § 2(b) supported this theory. *Id.* In recognizing that there is no general federal attempt statute, the Ninth Circuit held that

> either 18 U.S.C. § 2(b) would have to contain an attempt provision, or 22 C.F.R. § 127.1 would have to contain an attempted causation provision. Since neither statute does so, Kuok cannot be convicted on this count based on the government's evidence at trial. The government's argument that attempt should rationally be read into § 2(b) fails in light of the rule against reading an attempt into a criminal statute that does not explicitly include it.

*Id.*

13

The government first argues that the Eleventh Circuit has read an attempt provision in Section 2.  [Doc. 46 at 6 (citing *United States v. Hornaday*, 392 F.3d 1306, 1313 (11ᵗʰ Cir. 2004))].  However, *Hornaday* is inapposite and may even support the Defendant's argument over the government's.  In *Hornaday*, the defendant was charged by superseding indictment of violating 18 U.S.C. § 2422(b)[8] and 18 U.S.C. § 2.  *Hornaday*, 392 F.3d at 1308.  The facts at trial established that Hornaday contacted via a chat room an undercover agent, who was posing as an adult male who partakes in sexual activity with his own minor children, to join in the sexual activity of the undercover agent and the minor children.  *Id.* at 1308-09.  Hornaday sent the undercover agent a picture of himself so that the agent could show the children and convince the children to have sex with him.  *Id.* at 1309.  After a trial, a jury returned a general verdict of guilty.  *Id.*  On appeal, Hornaday argued that he was convicted in part on an invalid legal theory: "aiding and abetting an undercover agent who could not

---

[8]     18 U.S.C. § 2422(b) makes it a crime to

[use] the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States [to] knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person . . ., or attempt [] to do so.

14

himself be held responsible for the crime." *Id.* at 1312.  The Eleventh Circuit described

the purpose of 18 U.S.C. § 2(b) as

> designed for[] the situation in which a defendant with the requisite intent
> to commit a crime gets someone else to act in a way necessary to bring
> about the crime, even if that other person is innocent.  Or to put it another
> way, the defendant supplies the intent or maybe another element or two
> while getting someone else to supply at least one additional element that
> is necessary to the commission of the crime.  That someone else may be
> an undercover law enforcement officer or an entirely innocent third
> person.

*Id.* at 1313.  Thus, "a defendant can be held liable under § 2(b) for the acts of an

undercover agent which he causes where those acts would be an offense against the

United States if the defendant had done the acts himself."  *Id.* at 1314.  The Eleventh

Circuit thus found that "Hornaday did not 'aid, abet, counsel, command, induce, or

procure,' 18 U.S.C. § 2(a) (tense changed), [the undercover detective, acting as a father

of purported child-victims], to commit an offense against the United States.  Nor did

the detective commit any acts that, 'if directly performed by [Hornaday] or another

would have been an offense against the United States,' § 2(b), and more specifically the

offense for which Hornaday was convicted."  *Id.*  In making this finding, the Eleventh

Circuit looked to other cases where the defendant had procured or aided illegal conduct

actually done by the government agents which was not the case here.  *Id.* at 1313-14.

15

The Eleventh Circuit thus concluded that it was error for the trial court to give instructions on an 18 U.S.C. § 2 liability theory, and the government should not have argued that theory to the jury. *Id.* at 1314-15.[9]

Thus, what the *Hornaday* case teaches is that there can only be liability under § 2(b) if an act has been completed which would constitute an act against the United States. *Id.* at 1314. Stated another way, there can be no liability under § 2 when there is no act of a crime. Notably, the facts under *Hornaday* clearly established an attempt by the defendant to "cause" the undercover agent to violate § 2422(b), which would satisfy the government's argument under § 2. However, although the argument was never addressed, the Eleventh Circuit found that defendant could not be found guilty under § 2(b) under those circumstances.

The government also cited *United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003), in support of its position. This case was directly addressed and distinguished in *Kuok*. It is also distinguishable here. In *Zidell*, the indictment charged the defendant with "attempt to cause the possession with intent to distribute . . . methamphetamine" under § 2(b). *Zidell*, 323 F.3d at 421. As *Kuok* noted, the charge in the indictment was not

---

[9]     The Eleventh Circuit, however, found the error to be harmless as there was overwhelming and undisputed evidence of guilt under § 2422(b). *Hornaday*, 392 F.3d at 1316.

16

challenged, rather the defendant challenged the venue. *Id.* at 420-25; *Kuok*, 671 F.3d at 942. Further, *Kuok* correctly noted that *Zidell* dealt with the issue of "causing an attempt" rather than "attempting to cause" although the indictment indicated otherwise. In *Zidell*, the defendant was accused of convincing two others to travel from Tennessee to Texas, distributed methamphetamine to them and sent them back to Tennessee. *Zidell*, 323 F.3d at 417-18. Thus, the criminal act of possession with intent to distribute was completed when the co-conspirators received the drugs from the defendant, thereby causing an attempt of possession with intent to distribute, rather than attempting to cause possession with intent to distribute. *See Kuok*, 671 F.3d at 942. Moreover, the *Zidell* court explained the statute from whence the word "cause" derives in the charge of "attempt to cause the possession with intent to distribute" is derived from 18 U.S.C. § (2)(b), but does not explain the basis for an attempt to cause as it did not cite to any statute or congressional intent that reads attempt into § 2(b). *Zidell*, 323 F.3d at 424. Thus, *Zidell* is distinguishable.

Although the pending case is very similar to *Kuok*, the Court is somewhat hesitant to rely upon it because the *Kuok* court analyzed the issues there in light of the evidence introduced by the government at trial. *See, e.g., Kuok*, 671 F.3d at 941 ("However, the government's case at trial did not establish that Kuok *caused an attempt*

AO 72A
(Rev.8/8
2)

to export: it established that he *attempted to cause* an export." (emphasis in original).

Although other parts of the opinion appear to rely on statutory construction, *id.* at 942

("We hold that attempting to cause an export of defense articles without a licence is not

a violation of U.S. law"), the Eleventh Circuit has been strict about trial judges'

dismissing indictments on sufficiency of the evidence prior to trial.  *United States* v.

*Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (A "court may not dismiss an

indictment . . . on a determination of facts that should have been developed at trial.")

(quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987); *United

States v. Salman*, 378 F.3d 1266 (11th Cir. 2004) (holding that the proper avenue to

challenge the sufficiency of the government's evidence is by way of a motion for

judgment of acquittal after the close of the government's case, and not by a pretrial

motion to dismiss); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (holding

that a district court cannot properly dismiss an indictment on the ground that there is

insufficient evidence to support the allegations; noting that there was "no summary

judgment procedure in criminal cases. Nor do the rules provide for a pre-trial

determination of sufficiency of the evidence . . . The sufficiency of a criminal

indictment is determined from its face.  The indictment is sufficient if it charges in the

language of the statute."); *see also United States v. Baxter*, 579 Fed. Appx. 703, 705

18

(11th Cir. Aug. 21, 2014).  Thus, to the extent that the rationale of the *Kuok* decision is really based on sufficiency of the evidence presented by the government at Kuok's trial, this Court is not empowered to rely completely upon the reasoning of that decision.

On the other hand, the government points to no relevant statute or regulation which criminalizes an "attempt to cause" the unlicensed export of defense items, and the Court finds none.  While § 2(b) makes criminal causing another to commit an offense, as the *Kuok* court noted, overlaying that provision onto 22 C.F.R. § 127.1(a)(1) only criminalizes causing an export or an attempted export, and not, as alleged in *Kuok* and here, an "attempt to cause" the export of an unlicensed defense item.  *Kuok*, 671 F.3d at 941.  Similarly, another applicable version of § 127.1 provides that:

> No person may knowingly or willfully cause, or aid, abet counsel, demand, induce, procure or permit the commission of any act prohibited by, or the omission of any act prohibited by, or the omission of any act required by 22 U.S.C. [§] 2778, 22 U.S.C. [§] 2279, or any regulation, license, approval, or order issued thereunder.

22 C.F.R. § 127.1(d).  This subsection is in effect a "regulatory § 2", and overlaying § 2 onto that provision does not criminalize an "attempt to cause" an unlicensed export.  Nor can § 127.1(d) be read together with § 127.1(a) to criminalize an "attempt to cause" for the same reasons that § 2 cannot.

19

As a result, the undersigned concludes that Count Two's "attempt to cause" language does not state an offense, and therefore **RECOMMENDS** that that portion of Count Two be **DISMISSED**.

The motion to dismiss Count Four should be resolved similarly.  That count alleges that Aydin and Blue Sky:

> did knowingly and willfully attempt to export and attempt to cause to be exported from the United States to the Islamic Republic of Iran through the Republic of Turkey certain goods, namely aircraft parts, without first having obtained the required license and authorization from the United States Department of the Treasury's Office of Foreign Assets Control, in violation of Title 50, United States Code, Section 1705, in connection with Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; and Title 18, United States Code, Section 2.

[Doc. 39 at 19].  Title 50 U.S.C. § 1705, unlike 22 U.S.C. § 2778, expressly contains an attempt prohibition:

> (a) Unlawful acts

> It shall be unlawful for a person to violate, *attempt to violate*, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter.

> . . .

> (c) Criminal penalty

> A person who willfully commits, willfully *attempts to commit*, or willfully conspires to commit, or aids or abets in the commission of, an unlawful

20

act described in subsection (a) of this section shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both.

50 U.S.C. § 1705(a), (c) (emphasis added).  Count Four therefore validly charges an "attempt to export" since the statute contains express attempt provisions.  On the other hand, overlaying 18 U.S.C. § 2 upon § 1705 does not expressly criminalize an "attempt to cause" a violation, but rather, as in Count Two, causing an attempt to commit a violation of the statute.

Turning to the cited regulations, 31 C.F.R. § 560.203 provides, in relevant part:

Any transaction on or after the effective date that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this part is prohibited.

21 C.F.R. § 560.203(a).  The other cited regulation, 31 C.F.R. § 560.204 provides:

Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:

(a) Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or

21

(b) Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran.

Again, these provisions by themselves make it a crime to attempt to violate the Iranian arms embargo, and read in conjunction with § 2, to cause an attempt to violate the embargo. However, neither regulation alone, in conjunction with each other, or read in conjunction with § 2, criminalizes an "attempt to cause" a violation of the embargo.

As a result, the undersigned concludes that Count Four's "attempt to cause" language does not state an offense, and therefore **RECOMMENDS** that that portion of Count Four be **DISMISSED**.[10]

> B.    Counts One and Three-Multiplicitous

>> 1.    Contentions of the Parties

Aydin argues that Counts One and Three are multiplicitous in that they charge the same conspiracy in two counts. [Doc. 40 at 3-4]. He notes that Count One alleges a conspiracy under 18 U.S.C. § 371, while Count Three alleges a conspiracy under

---

[10]    Dismissing portions of Counts Two and Four neither requires dismissing the entire count(s) nor does it result in the improper amending of the indictment. *United States v. Miller*, 471 U.S. 130, 144 (1985); *United States v. Vernon*, 723 F.3d 1234, 1265-66 (11th Cir. 2013); *United States v. Haile*, 685 F.3d 1211, 1217-18 (11th Cir. 2012); *United States v. Ward*, 486 F.3d 1212, 1226-27 (11th Cir. 2007).

22

31 C.F.R. § 506.203.[11]   He then contends that since § 506.203 does not set forth

elements of a conspiracy, it therefore must have the same elements as a § 371

conspiracy, and thus the conspiracies in the separate counts are the same

offense.  [Doc. 40 at 4].

The government responds that the elements of each conspiracy are different in

that a § 371 conspiracy requires that the government prove an overt act while a

50 U.S.C. § 1705/31 C.F.R. § 560.203 conspiracy does not, and thus, the counts charge

separate offenses and are not multiplicitous.  [Doc. 46 at 9-10].  The government also

argues that even if the counts are multiplicitous, dismissal is not warranted, but rather

the government may elect which count it will pursue at trial.  [*Id.* at 11-12].

In reply, Aydin argues that the counts charge the same conduct in that they both

charge overt acts as described in ¶ 18 of the indictment.  [Doc. 47 at 5].  It argues that

the cases cited by the government are not illustrative because they did not discuss the

elements of a § 1705 conspiracy.  [*Id.*].  He further argues that the government's

---

[11]      Title 31 C.F.R. § 506.203 also provides:

. . .

(b) Any conspiracy formed to violate any of the prohibitions set forth in
this part is prohibited.

23

contention that a § 1705 conspiracy does not require an overt act is not accompanied by citation to authority. [*Id.*]. He argues that the counts set out exactly what is the danger of a multiplicitous indictment, that is, giving the jury two chances to convict the defendant. As a result, he argues the government must be compelled to make an election as to which count it upon which it will proceed. [*Id.* 5-6].

  2. <u>Discussion</u>

  An indictment is multiplicitous if it charges the same offense in more than one count. *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008). *United States v. De La Mata*, 266 F.3d 1275, 1288 (11th Cir. 2001); *United States v. Anderson*, 872 F.2d 1508, 1520 (11th Cir. 1989). A defendant cannot, of course, be punished for two crimes that constitute the "same offense." *Rutledge v. United States*, 517 U.S. 292, 297 (1996). When the government charges a defendant in multiplicitous counts, two vices may arise. First, the defendant may receive multiple sentences for the same offense. Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes -- not one. *United States v. Rahim*, 431 F.3d 753, 758 (11th Cir. 2005) (citing *United States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000)).

AO 72A
(Rev.8/8
2)

The test for determining whether an indictment is multiplicitous is set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932): "Whether each provision requires proof of an additional fact which the other did not."  The Eleventh Circuit has held that charges are not multiplicitous where they differ by even a single element or alleged fact.  *United States v. Vargas*, 563 Fed. Appx. 684, 687 (11ᵗʰ Cir. Apr. 17, 2014) (citing *United States v. Costa*, 947 F.2d 919, 926 (11ᵗʰ Cir. 1991)).

In the present case, Count One charges a conspiracy under 18 U.S.C. § 371.  In order to sustain a conviction under 18 U.S.C. § 371, the government must prove (1) the existence of an agreement to achieve an unlawful objective; (2) the defendants' knowing and voluntary participation in the agreement; and (3) the commission of an act in furtherance of the agreement.  *United States v. Adkinson*, 158 F.3d 1147, 1153 (11ᵗʰ Cir. 1998) (citing *United States v. Cure*, 804 F.2d 625, 628-30 (11ᵗʰ Cir. 1986)); *see also United States v. Hasson*, 333 F.3d 1264, 1270 (11ᵗʰ Cir. 2003) (citing *Adkinson*).

As to Count Three, Aydin misreads the charge.  Although the "in connection with" 31 U.S.C. §§ 560.203 and 560.204[12] and 18 U.S.C. § 2 makes the count

_____

[12]      Title 31 U.S.C. § 560.204 states:

Except as otherwise authorized pursuant to this part, and notwithstanding

25

somewhat less than a model of clear draftsmanship, it is clear that the conspiracy charged is under 50 U.S.C. § 1705. In order to convict Aydin of the conspiracy charged in Count Three under § 1705, the government would have to prove beyond a reasonable doubt that Defendant (1) entered into an agreement with another to export and cause to be exported F-14 fighter jet parts from the United States to Iran, through Turkey; (2) did so willingly, that is, voluntarily and intentionally in violation of a known legal duty under a statute, license, order, regulation or prohibition; (3) knew or had reason to know that those goods that were intended for delivery to Iran were controlled goods that required an export license; and (4) did not obtain the necessary license from OFAC

---

any contract entered into or any license or permit granted prior to May 7, 1995, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:

(a) Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or

(b) Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran.

AO 72A
(Rev.8/8
2)

before exporting the goods.  *See United States v. Quinn*, 403 F. Supp. 2d 57, 66 (D.D.C. 2005).

Neither the statutory ban under § 1705 (nor the prohibitions under the regulations) contain the requirement that the government prove an overt act, and thus the Count One conspiracy requires an additional factual element than the conspiracy charged in Count Three.  As the Supreme Count explained in *Whitfield v. United States*, 543 U.S. 209, 213-14 (2005), the common law understanding of conspiracy does not make the doing of any act other than the act of conspiring a condition of liability.  *Id.* (citing *United States v. Shabani*, 513 U.S. 10, 13-14 (1994)).  Thus, the *Whitfield* Court explained, Congress has a choice in enacting conspiracy statutes: if it includes an overt act requirement such as in § 371, then the conspiracy at issue requires the government to prove an overt act; however, if the statute "does not expressly make the commission of an overt act an element of the conspiracy offense, the [g]overnment need not prove an overt act to obtain a conviction.  *Id.* at 214.

As a result, Counts One and Three are not multiplicitous because the government must prove a different additional element in Count One–that being an overt act–that it need not prove to obtain a conviction on Count Three, and therefore, Aydin's

27

motion to dismiss (or to cause an election) on the grounds of the the counts are multiplicitous should be denied.

C.   Count Three-Failure to State an Offense

1.   Contentions of the Parties

Aydin makes three challenges to Count Three, and as to none does he cite to any supporting authority.  First, he argues that § 560.203 does not state an offense because it does not identify the elements of such a conspiracy.  [Doc. 40 at 4].  Next, he argues that the indictment does not state which "specific portion of part 560 the Defendants conspired to violate."  [*Id.* at 5].  Finally, he argues that there is no penalty provision assigned to such a conspiracy and that the regulation provides both civil and criminal penalties, thus resulting in a lack of notice to him.  [*Id.*].

In response, the government argues that Count Three charges a conspiracy under § 1705 and adequately charges the elements of such a conspiracy.  [Doc. 46 at 12-13]. Moreover, the government argues that an indictment is not defective just because it does not refer to a penalty provision, and in any event, § 1705(c) clearly states the potential penalty for conspiring to violate § 1705.  [Doc. 46 at 13].  In reply, Aydin argues that § 1705 is labeled "Penalties" and thus does not describe an offense. [Doc. 47 at 6].  He also argues that the government's response refers to § 371

28

cases.  [*Id.* at 7].  He finally argues that the indictment does not specify which penalty under 31 U.S.C. § 560.701[13] is applicable.  [Doc. 47 at 7].

---

[13]      31 U.S.C. § 560.701 states, in relevant part:

(a) Attention is directed to section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705) ("IEEPA"), which is applicable to violations of the provisions of any license, ruling, regulation, order, directive, or instruction issued by or pursuant to the direction or authorization of the Secretary of the Treasury pursuant to this part or otherwise under IEEPA.

. . .

(2) A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of a violation of any license, order, regulation, or prohibition may, upon conviction, be fined not more than $1,000,000, or if a natural person, be imprisoned for not more than 20 years, or both.

. . .

. . .

(b) Adjustments to penalty amounts.

. . .

(2) The criminal penalties provided in IEEPA are subject to adjustment pursuant to 18 U.S.C. 3571.

. . . .

31 U.S.C. § 560.701(a), (b).

29

2.    Discussion

Aydin's contentions should be rejected.  As noted in Part II.B.2, Count Three alleges a conspiracy to violate § 1705 "in connection with" 31 U.S.C. §§ 560.203, 560.204, and not as contended by Aydin a conspiracy under 31 U.S.C. §§ 560.203 and 560.204.  [Doc. 39 at 18-19].  The crime charged is conspiracy to violate § 1705, with the citation to the regulations merely referencing the regulations promulgated under the IEEPA.  The elements of a § 1705 conspiracy are set out in the statute, § 1705(a), and in Count Three.  *See also supra* Part II.B.2.  Moreover, the penalties for committing a § 1705(a) conspiracy are clearly set out in § 1705(c).

In making his argument, Aydin ignores the language of the very case he cites, *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988), which held that "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  The statute at issue here, § 1705, could not be more clear, and thus the heading or title does not add or detract from the statutes's meaning.  *Cf. Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (observing that although titles and section headings "cannot substitute for the operative text of the statute," they "are tools available for the resolution of a doubt about the meaning of a statute." (internal

30

quotations marks omitted)).  In the case of § 1705, there is no doubt as to its meaning and thus reference to the section's title is not warranted.  Also, it is not unusual for a statutory heading of "Penalties" to also set forth the elements of the crime.  *See, e.g.,* 12 U.S.C. § 1847 (penalties and crimes relating to bank holding companies); 16 U.S.C. § 1540 (penalties and enforcement relating to endangered species); 18 U.S.C. § 924 (penalties and crimes related to firearms); 29 U.S.C. § 216 (penalties and crimes related to fair labor standards).

Finally, Aydin's citations to 31 C.F.R. § 560.701 do not alter this conclusion. While Count Three refers to the C.F.R. provisions in charging the § 1705 conspiracy, the code section under which the defendants are being prosecuted is the conspiracy provisions of § 1705.

As a result, Aydin's motion to dismiss Count Three should be rejected.

D.     Count Three-Duplicitous

1.     Contentions of the Parties

Aydin also claims that Count Three is duplicitous in that it improperly charges two crimes in a single count: a conspiracy pursuant to § 1705 and aiding and abetting pursuant to § 2.  [Doc. 40 at 5-7].  He relies mainly on *United States v. Schlei*, 122 F.3d 944, 977-79 (11th Cir. 1997).  [Doc. 40 at 5-7].

31

The government responds that Aydin is incorrect in his argument that two crimes are charged in Count Three because § 2 is not a separate crime but rather an alternative charge that permits one to be found guilty as a principal or as an aider and abettor.  [Doc. 46 at 15].  It further argues that because the § 1705 conspiracy is a substantive offense, Aydin also can be found guilty of aiding and abetting the conspiracy.  [*Id.*].  The government also distinguishes *Schlei*, since in that case the defendant was not charged with a conspiracy and as an aider and abettor, but rather was charged with two separate acts of securities fraud in a single count, where one of those acts occurred in a venue over which the trial court did not have jurisdiction, and there was no special verdict instructing the jury to unanimously agree upon the act committed by the defendant.  [*Id.* at 15-16 (citation omitted)].  The government also argues that if the count is duplicitous, the remedy is to require it to elect which theory the government is proceeding or to instruct the jury that it must unanimously find the defendant guilty of one distinct act, but not to dismiss the indictment.  [*Id.* at 16].

In his reply, Aydin argues that Count Three charges a non-specified conspiracy but if the Court finds that it charges a § 1705 conspiracy, it also charges an additional conspiracy under 31 U.S.C. § 560.203(b).  [Doc. 47 at 7-8].  He also argues that the indictment does not charge–as alleged by the government–that he aided and abetted a

32

conspiracy, but rather charges that the named defendants, "aided and abetted by each other," conspired to violate § 1705 in connection with §§ 560.203 and 560.204 and § 2. [Doc. 47 at 8]. He argues that the manner that Count Three was drafted could result in his being charged with aiding and abetting the violations of 31 C.F.R. §§ 560.203 and 204, and that the drafting results in his being charged with several offenses in the same count. He contends that the remedy is to require the government to elect an offense and dismiss the remaining charge(s), and not simply to have the jury return a verdict on which charge the government has proven. [Doc. 47 at 9].

2. <u>Discussion</u>

A count in an indictment is duplicitous if it charges two or more "separate and distinct" offenses. *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997); *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989). The *Schlei* court recognized that a duplicitous count poses three dangers: "(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." *Id.* (quoting *United States v. Wiles*, 102 F.3d 1043, 1061 (10th Cir. 1996) (finding no duplicity where the indictment merely alleged

33

multiple means or methods of committing a single offense), *modified*, 106 F.3d 1516 (10th Cir. 1997), *judgment vacated on other grounds United States v. Schleibaum*, 522 U.S. 945 (1997).  Under this analysis, the key issue to be determined is what conduct constitutes a single offense.  *Schlei*, 122 F.3d at 977.  Whether a count is duplicitous is to be determined solely by reference to the face of the indictment.  *United States v. Sharpe*, 193 F.3d 852, 866 (5th Cir. 1999) (allegation of duplicity is analyzed by assessing the indictment to determine whether it can be read to charge only one violation in each count).

The government again has the better argument.  First, *Schlei* is not instructive because contrary to Aydin's representation, [Doc. 40 at 6-7], *Schlei* did not involve an aiding and abetting charge and a conspiracy count in the same count.  As noted in the government's response, the defect in *Schlei* was the inclusion of more than one securities transactions in a single count, where venue was improper in the charging district for one of those acts and the jury was not instructed to find unanimously which particular act the defendant committed.  *Schlei*, 122 F.3d at 177-79.

Second, aiding and abetting under § 2 is not a separate crime.  *United States v. Stitzer*, 785 F.2d 1506, 1519 n.7 (11th Cir. 1986) (citing *United States v. Pearson*,

AO 72A
(Rev.8/8
2)

667 F.2d 12, 13 (5th Cir. Unit B 1982)).[14]  Rather, "[i]t makes punishable as a principal

one who aids or abets the commission of a crime.  One indicted as a principal may be

convicted on proof beyond a reasonable doubt that he aided and abetted." *United States*

*v. Megna*, 450 F.2d 511, 512 (5th Cir. 1971) (citations omitted).

Third, although it could have been more clearly worded, Count Three alleges that

the defendants named therein conspired to violate § 1705 or aided and abetted a § 1705

conspiracy.  The Court gives effect to each term of the indictment.  *See United States*

*v. Bornscheuer*, 563 F.3d 1228, 1237 (11th Cir. 2009).  As a result, there is a difference

between the conspiracy charged in Count One, which alleges that "the

defendants . . . with each other and with others known and unknown, did knowingly

and willfully . . . conspire . . . to commit [certain] offenses," [Doc. 39 at 7 ¶ 16], and

Count Three, where the grand jury alleged that Aydin, Kamyari and Blue Sky "aided

and abetted by each other, did knowingly and willfully conspire to export and to cause

to be exported from the United States" certain goods, etc.  [*Id.* at 18 ¶ 22]. To be guilty

of aiding and abetting a conspiracy, a defendant need only "associate himself with the

---

[14]     Section 2 governs the liability of aiders and abettors as principals, stating
that "[w]hoever willfully causes an act to be done which if directly performed by him
or another would be an offense against the United States, is punishable as a principal."
18 U.S.C. § 2.

AO 72A
(Rev.8/8
2)

crime, participate in it as something he wishes to bring about, and seek by his actions to make it succeed." *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) (quoting *United States v. Pepe*, 747 F.2d 632, 665 (11th Cir. 1984)).  An aiding and abetting offense occurs when a defendant assists the perpetrator of the crime while sharing in the requisite criminal intent.  *Id.* (citing *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir. 1977)); *see also United States v. Alvarez*, 610 F.2d 1250, 157 & n.6 (5th Cir. 1980) (describing an aider and abettor of a conspiracy as an accessory in a conspiracy).

Because the addition of § 2 (or "aiding and abetting") does not place additional liability on the same conduct, but merely serves to clarify why each defendant may be criminally liable, the Court finds that the charging of both the conspiracy and aiding and abetting provisions inside one count is not duplicitous.  *See Baumann v. United States*, 692 F.2d 565, 571-72 (9th Cir. 1982) (holding an indictment was not duplicitous for including § 2 along with another statute in a substantive count, because § 2 "provides a means of establishing liability but does not itself define a crime").

As a result, Aydin's challenge to Count Three as duplicitous should be rejected.

36

E.      Counts Six and Seven-Failure to State an Offense

      1.      Contentions of the Parties

Aydin alleges that Counts Six and Seven are invalid because § 1705 is not included as a "specified unlawful activity" under 18 U.S.C. § 1956(b)(7), nor is it cross-referenced under 18 U.S.C. § 1961(1).  [Doc. 40 at 7-8].

The government responds that Aydin's motion should be denied for two reasons. First, Counts Six and Seven also identify 18 U.S.C. § 2778 as a specified unlawful activity and § 2778 is identified as a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(v)(I).   [Doc. 46 at 17].   Second, it contends that 18 U.S.C. § 1956(c)(7) includes "section 206 (relating to penalties) of the International Emergency Economic Powers Act" as a specified unlawful activity, 18 U.S.C. § 1956(c)(7)(D), and that provision is a reference to § 1705. [Doc. 46 at 18].  In his reply, Aydin repeats the arguments in his opening brief and further contends, as he did in reference to his challenge to Count Three, that § 206 of the IEEPA is a penalty provision that cannot therefore be a specified unlawful activity under § 1961.

2.    <u>Discussion</u>

Aydin's arguments as to Counts Six and Seven are frivolous.  The money laundering counts in these counts are properly pleaded because (1) they include § 2778, which is listed as a specified unlawful activity under § 1956(c), and (2) § 206 of the IEEPA is codified at 50 U.S.C. § 1705.  *United States v. Elkins*, 885 F.2d 775 (1989); *In re 650 Fifth Ave.*, No. 08 Civ. 10934(KBF), 2013 WL 5178677, *19 (S.D.N.Y. Sept. 16, 2013) ("Section 1956(c) (7) of Title 18 defines 'specified unlawful activity' to include offenses under 'section 206 (relating to penalties) of the International Emergency Economic Powers Act.' 18 U.S.C. § 1956(c)(7)(D).  The IEEPA was enacted in 1977 and empowers the President of the United States to employ economic sanctions and other measures in response to situations which he has declared to be national emergencies.  *See* 50 U.S.C. § 1702 (2001).  Section 206 of the IEEPA is codified at 50 U.S.C. § 1705 (2007)").

As a result, Aydin's motion to dismiss Counts Six and Seven should be denied.

Accordingly, for all of the above reasons, the undersigned **RECOMMENDS** that Aydin's motion to dismiss the indictment, [Docs. 34, 40], be **DENIED**.

38

III.    *Motion to Strike Surplusage, [Doc. 41]*

    A.    <u>Contentions of the Parties</u>

In this motion, Aydin contends that the historical background in ¶¶ 5, 6 and 13 of the indictment should be stricken as irrelevant, gratuitous, unfairly prejudicial and inflammatory.  The provisions he seeks to have stricken are as follows:

    1.  From ¶ 5:

At all times relevant to this Indictment, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country, in response to an unusual or extraordinary threat to the national security~~, foreign policy or economy of the United States when the President declared a national emergency with respect to that threat~~.

[Doc. 41 at 2 (strikeout in original)].

    2.  From ¶ 6:

~~On March 15, 1995, the president issued Executive order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat."  Executive Order No. 12957, as expanded and continued by Executive Order No. 12959 (issued on May 6, 1995) and Executive Order No. 13059 (issued on August 19, 1997), was in effect at all times relevant to this Indictment pursuant to the publication of the Notice of Continuation of the National with Respect to Iran. See 74 Fed. Reg. 10999 (March 11, 2009) and 75 Fed. Reg. 12117 (March 10, 2010).~~

39

[Doc. 41 at 2 (strikeouts in original)].

    3.  From ¶ 13:

> ~~In furtherance of world peace and the security and foreign policy of the~~
> ~~United States, the Arms Export Control Act (22 U.S.C. § 2778 et seq.)~~
> ~~authorized the President of The United States to control the export of~~
> ~~defense articles and defense services.  The regulations which govern such~~
> ~~exports are titled the International Traffic in Arms Regulations (ITAR)~~
> ~~(22 C.F.R. §§ 120-130)~~.  The ITAR contains a list of defense articles and
> defense services which are subject to control by these regulations. The list
> is called the United States Munitions List (USML) (22 C.F.R. § 121.1).
> At all times relevant to this Indictment, the following items, which were
> designed for use on the F-14 fighter jet, were designated on the
> USML[. . . .]

[Doc. 41 at 3 (strikeouts in original)].

He argues that the language requested to be stricken is not an element of the offense charged, 18 U.S.C. § 371, and that any language which is not a necessary ingredient of the offense charged is surplusage.  [Doc. 41 at 3 (quoting *Johnson v. Biddle*, 12 F.2d 366, 369 (8th Cir. 1926)].  He further contends that presenting the history of the statutes may be beneficial at trial but to allow inclusion of the language in the indictment would allow the government "to 'thoroughly present its case to the jury before the trial even began, at a time when the defendant would not be entitled to defend himself,' " and is inflammatory and unduly prejudicial.  [*Id.* at 4 (quoting *United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005), *aff'd* 482 F.3d 648

40

(4th Cir. 2007))].  He argues that the offending language implies that Aydin is lumped together "with the persons that the statutes were meant to protect The United States against."  [*Id*].

In response, the government argues that the language is not surplusage and should not be stricken.  It argues that the allegations are relevant to the charges and is not inflammatory or prejudicial.  Specifically with regard to ¶ 13 of the indictment, the government argues that it identifies the International Traffic in Arms Regulations at issue and thus notifies the defendant of the manner in which the government contends he violated the law, and to remove it would remove the regulations from the case.  [Doc. 45 at 2-3].  In the alternative, the government argues that the Court should reserve the motion until evidence is presented at trial.  [*Id.* at 3].  Aydin did not file a reply.  [*See* Dkt.].

 2. <u>Discussion</u>

Federal Rule of Criminal Procedure 7(d) provides that upon the defendant's motion "the court may strike surplusage from the indictment or information."  *United States v. Bissell*, 866 F.2d 1343, 1357 (11th Cir. 1989).  A motion to strike surplusage from an indictment should not be granted "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most

41

'exacting standard.' " *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990), and 1 Charles A. Wright, *Federal Practice and Procedure* § 127 at 424-29 (1982)) (internal quotations and omitted).  It is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language.  *Id.* at 1426; *see also United States v. Fahey*, 769 F.2d 829, 842 (1st Cir. 1985) (after hearing evidence, the trial court refused to strike certain alleged surplusage from the indictment).

Before discussing the particulars of the motion, the Court first addresses why it does not rely upon the cases cited by Aydin.  First, the Court does not rely upon *Johnson v. Biddle* as that case does not construe Rule 7(d), having been decided before the Rule's enactment, does not discuss whether the questioned language was inflammatory or prejudicial, and perhaps most significantly, concerns a conviction under military law. *See Johnson*, 12 F.2d at 369.  Second, in *Cooper*, an environmental crimes prosecution, the material stricken was the defendant's history, the stricken material was defendant's past troubles with environmental agencies, and the trial court found those allegations unnecessary and unduly prejudicial.  *Cooper*, 384 F. Supp. 2d at 960.  In the current case, the language Aydin contends is surplusage is not his past

42

dealings with the government but rather identifies the legal authority for the promulgation of Executive Orders which Defendants sought to evade.

Thus, the Court first finds that the allegations sought to be stricken from ¶¶ 5 and 6 of the indictment are relevant to the charge and neither inflammatory nor prejudicial.  The language in ¶ 5 merely sets forth the grounds under which the President may exercise discretionary authority under the IEEPA, *see* 50 U.S.C. § 1701(a), while ¶ 6 alleges that the findings underlying Executive Orders issued by the President were in compliance with that authority.  Since Defendants are charged, *inter alia*, with conspiring to export prohibited items to Iran in contravention of those Executive Orders, the existence and validity of those Executive Orders are relevant to the charge(s).  Further, as presented in the indictment, the language sought to be stricken is neither inflammatory or overly prejudicial.

Similarly, the language sought to be stricken from ¶ 13 is relevant and not inflammatory or prejudicial.  Again, the language of the indictment sets out the language of the statute, 22 U.S.C. § 2778, and identifies the regulations promulgated in compliance with the statute, that in turn identify arms and munitions which require a license to export.  Defendants are charged with conspiring and attempting to export prohibited items without the necessary license, and thus the language of the paragraph

43

is relevant to the charge.  In addition, Aydin has not shown that the language is inflammatory or prejudicial.

The Court understands Defendant's concern that he not be painted with the opprobrium that befalls nations which have been designated the subject of an arms embargo, but one of the issues in the case is whether Defendants conspired or attempted to violate the enforcement provisions of such an embargo, and so the admission of evidence related to the embargo and Iran is unavoidable.  As such, he has not satisfied the "exacting standard" necessary to warrant redaction of the language from the indictment.

As a result, Aydin's motion to strike surplusage, [Doc. 41], is **DENIED**.

IV.   *Conclusion*

For all the above and foregoing reasons, the undersigned **RECOMMENDS** that Defendant Aydin's motion to dismiss, [Doc. 34, 40], be **GRANTED IN PART AN DENIED IN PART**.   Specifically, the undersigned **RECOMMENDS** that the allegations in each count that Aydin did "attempt to cause" a violation be dismissed. Defendant Aydin's motion to strike surplusage, [Doc. 41], is **DENIED**.

The Court has now ruled upon all matters referred to it.  Therefore, the action as to this defendant is **CERTIFIED READY FOR TRIAL**.

44

**IT IS SO RECOMMENDED, ORDERED and CERTIFIED**, this the  16th

day of January, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)